IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

MARCO GUIRLANDO                                                    PLAINTIFF

v.                              Civil No. 1:21-cv-01015

OUACHITA COUNTY JAIL; DAVID NORWOOD,
Sheriff Ouachita County; CAMERON OWENS, Captain;
CORPORAL McDONALD; NURSE DOE; C/O ERWING;
C/O JOHN DOE; CITY TELE COIN; JERRY JUNEAU,
CEO City Tele Coin; and GUARD ELLIS                                DEFENDANTS

## REPORT AND RECOMMENDATION

This is a civil rights action filed by Plaintiff Marco Guirlando pursuant to 42 U.S.C. § 1983.

Plaintiff proceeds *pro se* and *in forma pauperis*.  Pursuant to the provisions of 28 U.S.C. §

636(b)(1) and (3) (2011), the Honorable Susan O. Hickey, Chief United States District Judge,

referred this case to the undersigned for the purpose of making a Report and Recommendation.

The case is before the Court for preservice screening under the provisions of the Prison

Litigation Reform Act.  Pursuant to 28 U.S.C. § 1915A, the Court has the obligation to screen any

complaint in which a prisoner seeks redress from a governmental entity or officer or employee of

a governmental entity.  28 U.S.C. § 1915A(a).

### I. BACKGROUND

Plaintiff is currently an inmate in the Tallahatchie County Correctional Facility in Tutwiler,

Mississippi.  His claims in this lawsuit arise from alleged incidents which occurred while he was

incarcerated in the Ouachita County Jail ("OCJ") in Camden, Arkansas between September of

2020, and May of 2021.  Plaintiff filed his original complaint on March 25, 2021, in the United

States District Court, Western District of Louisiana.  (ECF No. 1).  On March 31, 2021, the case

was transferred to the Western District of Arkansas, El Dorado Division.  (ECF No. 4).

1

In his original Complaint Plaintiff attempted to assert unrelated claims against eighteen (18) Defendants while he was incarcerated at two separate facilities. Plaintiff named the following Defendants in the original Complaint: 1) City Tele Coin and its Chief Operating Officer Jerry Juneau - each of whom resides in Bossier City, Louisiana. Plaintiff stated they were "added for discovery purpose"; 2) Captain Richard Mitcham, Billy Perry, John Ward, Paul Kugler, Nurse Sherie Rice, Dr. Deanna Hopson, C/O Tubbs, Kevin Pendleton, Union County Jail, and Sheriff Ricky Roberts – each of whom is employed by or provides services to the Union County Jail; and 3) the OCJ, Sheriff David Norwood, Captain Cameron Owens, C/O McDonald, Nurse Doe, and C/O Erwing – each of whom is employed by or provides services to the OCJ. (ECF No. 1, pp. 4-5).

On April 5, 2021, the Court ordered Plaintiff to submit an Amended Complaint and a completed *in forma pauperis* ("IFP") application by April 26, 2021.  (ECF No. 6).  In this order the Court: 1) terminated the Ouachita County Jail and the Union County Jail as Defendants because they are buildings, not legal entities subject to suit under 42 U.S.C. § 1983; 2) terminated CITY Tele Coin and Jerry Juneau as Defendants because Plaintiff did not assert any claims against them and clearly stated he had named them solely for the purpose of discovery; 3) severed the claims against Sheriff David Norwood, Captain Cameron Owens, C/O McDonald, Nurse Doe, and C/P Erwing and opened up the instant lawsuit naming these individuals as Defendants. *Id.*

In response to this Court's order, Plaintiff filed an Amended Complaint on April 27, 2021. (ECF No. 11).  On May 13, 2021, the Court granted Plaintiff's IFP application.  (ECF No. 13). The following day, the Court determined the Amended Complaint was deficient because Plaintiff did not clearly state how each named Defendant violated his federal constitutional rights, and some of his claims appeared to be frivolous. (ECF No. 14).  Consequently, the Court directed Plaintiff

to file a Second Amended Complaint. *Id.* Plaintiff submitted a Second Amended Complaint on June 3, 2021 but failed to sign the pleading and it was returned to him with instructions to sign and return it for filing with the Court. (ECF Nos. 19, 20). On June 10, 2021, Plaintiff filed his signed Second Amended Complaint. (ECF No. 22).

Plaintiff specifically names the following as Defendants in the Second Amended Complaint: the OCJ; David Norwood – the Sheriff of Ouachita County; Cameron Owens – a Captain at the OCJ; C/O McDonald – a guard at the OCJ; C/O Erwing – an officer at the OCJ; Jane Doe – a Nurse at the OCJ; C/O John Doe – an officer at the OCJ; City Tele Coin – the provider of phone services for the OCJ; and Jerry Juneau – identified as the "CEO" of City Tele Coin. (ECF No. 22). Although not specifically named as a Defendant, Plaintiff makes allegations against Guard Ellis in the Second Amended Complaint.[1] *Id.* at p. 12. Plaintiff states at the time of the alleged incidents he was "in jail and still awaiting trial on pending criminal charges".[2] *Id.* at p. 4. When asked to provide the date of his conviction or probation or parole revocation he states "April 30, 2021". *Id.*

Plaintiff asserts three enumerated claims: 1) denial of medical care by Defendant Nurse Jane Doe; 2) use of excessive force by Defendants Norwood, Owens and Erwing; and 3) "1st Amendment/Denial of Freedom of Speech". However, within Claim 3 Plaintiff includes subsections titled "Freedom of Speech – (Publications)", "Freedom of Speech – (1st & 5th Amendment) RFRA-RLUIPA (Religion)", "Due Process-Equal Protection Law", and "Federal Privacy Act (Fourth Amendment)". (ECF No. 22, pp. 5-10). Plaintiff is suing Defendants in their

---

[1] On June 22, 2021, the Court directed the Clerk to add the following Defendants to the case (some for the second time after the Court previously dismissed them): the OJC; C/O John Doe, City Tele Coin; Jerry Juneau, CEO of City Tele Coin; and Guard Ellis. (ECF No. 26).

[2] However, Plaintiff was charged with Traveling with Intent to Engage in Illicit Sexual Conduct and pled guilty to that charge on September 30, 2019. *United States v. Guirlando*, 1:20-CR-10005-001. He was sentenced on May 3, 2021.

personal and official capacities. He is seeking compensatory and punitive damages, a declaratory judgment, and various injunctive relief.[3] *Id.* at pp. 17-19.

Plaintiff describes Claim One as "Denial of Medical Care (14th amendment)/Deliberate Indifference". (ECF No. 22, p. 5). He alleges on "9/24/2020 to current/ongoing (May 2021)" Defendant Nurse Jane Doe failed to comply or carry out medical orders prescribed by a doctor for Plaintiff to use a "therapy ball – a course of treatment to address the recently improperly healed hand". *Id.* Plaintiff alleges his medical needs were serious and the lack of the therapy ball "would result in permanent and irreparable damage…". *Id.* at p. 6. He describes his official capacity claim as follows: "OCJ maintained and approved a policy, practice or custom that was the moving force behind when they systematically with malice delayed medical care into the system that intentionally denied, limited or delayed specialist referrals for medical care. Furthermore, they maintain a policy or lack of a policy and interfered with medical orders prescribed by a physician." *Id.* at pp. 6-7.

Plaintiff describes Claim Two as "Excessive Force". He alleges on or about December 18, 2020, Defendants Norwood, Owens, and Erwing used excessive force against him. (ECF No. 22, p. 7). He specifically describes his claim as follows:

> …Plaintiff was exiting his cell since his name was called to obtain the commissary that he ordered when he noticed Defendants Owens and Erwing, who have repeatedly threatened the Plaintiff for filing grievances against them was glaring up at him.
>
> At the moment that Plaintiff saw the situation with the Captain of the jail, just staring angrily at him, caused the Plaintiff to become instantly in fear. He stopped. He had no choice to go down the stairs and past them…
>
> Before Plaintiff regained his steps, and without any provocation or so much a word from Plaintiff – Defendant Erwing stated in a loud, clear voice where every

---

[3] Because Plaintiff is no longer incarcerated in the OCJ, his claims for injunctive relief are moot. *See Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (release from the institution in which the injunctive relief is sought against moots the request for injunctive relief).

inmate should of hear it.. 'There he is…just give me the word captain and I will just mace-taz this mother f…r right now.'

As he stated this, his hand appeared to go to his holster where his weapon is. The threat was real and Plaintiff was frozen in fear. With nowhere to run or anyone to turn to – he stood there and urinated on himself…

As Plaintiff went by Defendants Owens and Erwing, a comment was muttered – 'file some more shit boy and see what happens.' Threats were common, however the escalation with threats with a weapon brought the situation to a different level as never had Defendant used the weapon along with the threat.

The malicious and sadistic behavior by the Defendant was reported directly via email to the sheriff by a third party via email the same as is with most incidents, his [Plaintiff's] lawyer and family routinely email to document matters of importance.

Pleads went out to the Sheriff to stop this abuse. That this young man cannot stand much more mental and abusive behavior out of shitty jailers any longer…

*Id.* at pp. 7-9. Plaintiff describes his official capacity claim for Claim Two as follows:

Defendants under the color of law did maintain and operated a policy or practice or custom that was the moving force behind the constitutional violation where they failed to maintain a policy (lack of policy) that would address the need of routing training and supervision that would create an atmosphere a OCJ that was not threatening, hostile and dangerous. Sheriff Norwood did fail to supervise and train subordinates. Captain Owens failed to supervise.

*Id.* at p. 9.

Plaintiff initially describes Claim Three as "1st Amendment/Denial of Freedom of Speech". When asked to name the Defendant(s) involved he states "All". Plaintiff alleges the incidents giving rise to the claim occurred "Sept. 24, 2020 to Current/Ongoing (May 2021)". (ECF No. 22, p. 10). Claim Three consists of nine (9) pages of narrative with four (4) subheadings. For clarification, the Court will refer to these claims and sections in Claim Three as follows: Claim 3(a) "1st Amendment/Denial of Freedom of Speech"; Claim 3(b) "Freedom of Speech – (Publications)"; Claim 3(c) "Freedom of Speech – (1st & 5th Amendment) RFRA – RLUIPA

(Religion)"; Claim 3(d) "Due Process – Equal Protection Law"; and Claim 3(e) "Federal Privacy Act (Fourth Amendment)". *Id.* at pp. 14, 15, 16.

In Claim 3 (a) "1st Amendment/Denial of Freedom of Speech", Plaintiff states in part:

Plaintiff, shortly after learning from other inmates in the pod he was placed in – that the Captain – Defendant Owens, spoke to inmates about him before he was even at the jail. Plaintiff was labeled a trouble maker – not to be friendly towards him and offer him nothing – no help. That the 'word' came from the other jail about him through Captain Owens – as related to him though other inmates, which caused Plaintiff to be on guard and document everything correctly and to seek redress when needed. Which is what he did.

On or about January 14, 2021, Defendant Owens delivered a small packet of legal mail. He opened the packet from the lawyer and went page by page – reading through his legal work. Part of that package was a typed rough draft complaint against (OCJ et al) that Plaintiff had hand written and mailed out to be simply typed by an associate. As well, shortly afterwards the Plaintiffs cell was ransacked and Plaintiff was moved to solitary confinement with no working call button.

There was no disciplinary report written, not so much as an explanation. Furthermore, all his legal work and belongings were removed, he was placed in the hole, without due process. On or about January 15, 2021, Plaintiff had a Zoom meeting with one of his federal attorneys, Blake Hendrix, Plaintiff begged Mr. Hendrix to contact the USMS to come and speak with him about the 'incident'. Mr. Hendrix advised both his client and his client's parents that he had in fact called the USMS to check on the wellbeing and circumstances of clients' conditions. The USMS never showed up even though repeated request were made. It was later discovered that Defendant Norwood had contacted the USMS discreetly and told them not to come.

On or about Feb 1, 2021, after having been in the 'hole' for 19 days, one of Plaintiffs' attorneys, Mr. Bridewell called Defendant Owens to ask when Plaintiff would be allowed to have his commissary, phone calls, and access to a tablet reinstated, since he had no infraction or disciplinary. Mr. Bridewell was simply told, by Defendant Owens, 'We'll see.' Then on or about Feb 5, 2021, day 23 of solitary confinement, Defendant Owens wrote two disciplinary infractions on Plaintiff. Plaintiff appealed. Later that night Plaintiff did get moved back to D Pod but was placed in his cell on 23 hour lock down, thus still solitary confinement. The other inmates in D Pod were out all day in the Pod. During Plaintiffs one hour out, he was finally able to make a phone call at approximately 10am, to his mother. Plaintiff had not been allowed phone access for 23 days. Prior to this unwarranted removal of phone access Plaintiff called his mother every single day, multiple times.

Once Plaintiff was back in D Pod, although still in solitary, the other inmates one by one came to his door and told him, through the 'food trey slot in the door' about the following incident which was capture on body cams. {All inmates were brought outside to the yard and told to line up. Defendant John Doe then instructed them, with body cams off, to state that Plaintiff had planted contraband in each of their cells when asked and that if they did not repeat this lie then they too would be placed on lockdown. Defendant John Doe then turned body cams back on and simply asked, 'Who planted contraband in your cells", in unison, all of the inmates stated, 'Marco.'} Let it be noted that during the time Defendant John Doe asked inmates this question, Plaintiff was still in full lock down, and not in D Pod. To date that tape has not been used or released. Inmate witnesses comments were that Marco was going to 'get it' if he keeps filing grievances.

On or about Feb. 8, 2021, day 26 of solitary confinement (in D pod now), Guard Ellis told all of the inmates in D Pod, "Do Not Talk to Marco or give him any affidavits or they will also go into solitary confinement within their cells in D Pod. Plaintiff had been asking the other inmates in D Pod for their affidavits about the 'yard incident" and had in fact been collecting those affidavits from the other inmates. Plaintiff's mother documented that with an email to Defendant Sheriff Norwood. Plaintiffs' lawyer called Defendant Norwood to inquire about the 'incident on the yar' and to ask what the discipline infractions were but Defendant Norwood did not respond about said 'yard incident' and instead said Plaintiffs infractions included having knowledge of another inmates birthday, which was a fraud infraction and being in possession of a pencil?! Defendant Norwood than stated, he himself had talked to the US Federal Marshals about Plaintiffs federal hearing date as to when it would be scheduled.

On or about Feb. 15, 2021, day 33 of solitary confinement, Plaintiff had a Zoom call with his federal attorney, Mr. Hendrix. At this time Plaintiff asked why, Defendant Sheriff Norwood, would have knowledge as to when his federal sentence would be set. Mr. Hendrix was at a loss and stated 'this is typically a decision made by Judge Hickey's scheduling secretary, Robin.' However, it appeared 'other' people, including but not limited to the USMS and Defendant Norwood were now involved and in contact and influencing Marco's case as well as influencing the date for his federal hearing to be set, in the hope of adversely affecting Plaintiff's case by keeping him at the jail longer to possible 'plant' evidence against him or to get him hurt.

Ironically, death threats begin to be made towards Plaintiff from two particular inmates, who had the same federal Judge as plaintiff. Defendant Owens told Mr. Bridewell this is why Plaintiff was being held in solitary now, due to the death threats. Also, ironically, after the other federal inmates had their sentencing hearings in front of Judge Hickey, the inmates then came to Plaintiff "food trey slot" in the door and told him, they were told to make the threats by Defendant Owens and Defendant Norwood, but that they had no problem with Plaintiff and felt like they could now tell Plaintiff why they made the statements now that they

had their sentence.  At that time Plaintiff had now been in solitary confinement 86 days.

Plaintiff during the days – weeks in the hole without any wrong doings was denied access to medical services.  He asked every day that he was in there for access to medical.  He was having bad nerve pain, he needed help.  Each time he asked – the officers would laugh and say 'sure buddy'.

Not only was he denied medical but Defendant Owens came back and told Plaintiff that he will go paper by paper and after he reads each page – he will return what he thinks could be consider "legal".

The research papers that pertains to Plaintiff legal case(s) that has been compiled for the last two years.  Now, without so much as the guise of searching the legal mail as incoming mail, Defendant Owens now is just assuming he can go into his cell page by page of his legal work and read it now; since it's already inside his cell…

While in the 'hole" for not ever explained to the Plaintiff, he asked why he was being denied phone calls with his lawyers and family.  He was not given an answer. One of Plaintiff's lawyers, Mr. Bridewell was then told by Defendant Owens that it would be a month until he can get a visit scheduled with the Plaintiff, which in this case, would have been past Plaintiff court appearance.  Mr. Bridewell asserted his rights to access to his client and was eventually allowed the phone call.  Mr. Bridewell represented Plaintiff in a criminal matter that was scheduled for pretrial hearing, in which the judge ordered that Plaintiff (Defendant) be present, which Defendant Owens and Defendant Norwood did in fact not release Plaintiff to the other agency for transport to court.  Therefore the proceedings were held via Zoom. However Defendant Owens had the court held up without Plaintiff present at the scheduled hearing time as well as not allowing Plaintiff to shave.  Mr. Bridewell in the ZOOM meeting did in fact say to the state judge of his client, that he was not brought to the Zoom hearing at the scheduled time but rather at the end of court and his client not being allowed to shave.

(ECF No. 22, pp. 10- 14).

In Claim 3 (b) "Freedom of Speech – (Publications), Plaintiff states:

Just as well, the first amendment also forbids (OCJ) policy, practices or customs from abridging the freedom of speech, or the press or of the right of the people to peacefully assemble and to petition the government for a redress of grievances.

Plaintiff re-alleges and incorporate previous stated paragraphs.

Freedom of Speech, it's said often 'freedom to read'…forbid a person to read and you shut him out of the market place of ideas and opinions that it is the purpose of

the free-speech clause to protect.  (OCJ) violated that protected right when it denied Prison Legal News as well as books ordered from Amazon, for occurrences.

Defendant Owens, Sheriff Norwood and (CTC) coordinated together to interfere and deny him access to his phone system – owned – operated by (CTC) and is agents in an attempt to comply with their client, (OCJ), (CTC) did in fact take unlawful orders – without any due process, turned off his telephone access by turning his account off.

Not only did it deprive him of access not only to his loved ones, but also his legal counselors.  Named Defendant denial of phone and kiosk prevented the protected right to communicate with his attorneys in civil and criminal matters and caused damages which are still being tolled, but as well its denial of phone – kiosk prevented sick call request, or to be able to file grievances.

Even though prisoners have a first amendment right to read, and publishers and others have a right to send them reading material, (OCJ) has an absolute ban for all prisoners including Plaintiff to receive, books, newspapers and magazines. Plaintiff during the time frame that he was there had not received any of these materials paid for by his family.  Some were returned to the publishers and other times these materials would wind up being ready by the guards and thrown away. Material that he was ordering that was rejected was school books for his college, prison legal news and American English literature…

(ECF No. 22, pp. 14-15).

In Claim 3 (c) "Freedom of Speech – (1st & 5th Amendment) RFRA – RLUIPA (Religion)",

Plaintiff states:

The Denial by (OCJ) of religious material, such as the Jewish Bible and material that was shipped to him from amazon violated the prisoner's constitutional protected rights, and was done so with the purpose to inflict substantial burden and pressure and that was meant o force adherents like the Plaintiff to forgo religious precepts and violates his rights and beliefs…During the time frame he was at (OCJ) they rejected the reading of religious material that was sent to their jails, as well as Prison Legal News.

(ECF No. 22, p. 15).

In Claim 3 (d) "Due Process- Equal Protection Law", Plaintiff alleges:

Given the high stakes regarding pre-trial detainees' legal situation and the need to engage with his legal work daily, Defendants of (OCJ) have created atypical and significant hardship to the Plaintiff when they escalated their campaign of retaliation against him.

Due process clauses protect persons from being 'deprived' of life, liberty or property without due process.  Since the behavior and acts alleged within this complaint is intentional, then it is a deprivation for the due process purpose.

Plaintiff re-alleges paragraphs already stated within this complaint…(OCJ) Defendants violated the Plaintiff's due process and equal protection right when they interfered with his legal papers and mail and denied him access to the phone and law library, grievance for filing stretches of time, writing material even.  He has not had all his material returned to date and is coming up with a 'certain sum' of the lost.

Furthermore, Plaintiff understands that purpose of placing him in the cell that is smeared with feces and infested with insects, without light for 18 hours a day, and without all his property as well as stripping him of all his due process rights to defend of why he was placed in such conditions does violate his rights to due process.

(ECF No. 22, pp. 15-16).

In Claim 3 (e) "Federal Privacy Act (Fourth Amendment)", Plaintiff alleges the "(OCJ) violated the Federal Privacy Act, when they posted a photo of the Plaintiff on their website which initially directly and indirectly lead to one of the many verbal assaults and threats on the plaintiff by other prisoners".  (ECF No. 22, p. 16).

Plaintiff then goes on to describe his official capacity claim in Claim Three as follows:

OCJ and its agents operate, maintain and implemented a blanket policy of denying prisoners publications, materials, sent from publishers into their jails.  This policy practice or custom of denying the prisoners publications, reading material, newspapers of current events, is the moving force behind the constitutional violation of the constitution of the Freedom of Speech as well OCJ and its agents maintains a policy, practice or custom of retaliating against plaintiff or seeking redress from the government through the grievance procedures.

OCJ operated maintained and implemented when they denied the plaintiff his religious materials and intentionally made it so problematic for him to obtain and practice his religion by intentionally responding to his request with false assertions.

(ECF No. 22, p. 17).

## II.  APPLICABLE LAW

Under § 1915A, the Court is obligated to screen the case prior to service of process being issued.  The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than to vindicate a cognizable right.  *Spencer v. Rhodes,* 656 F. Supp 458, 464 (E.D.N.C. 1987); *In re Tyler,* 839 F.2d 1290, 1293-94 (8th Cir. 1988).  A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'"  *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  This means "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework."  *Jackson v. Nixon,* 747 F.3d 537, 544 (8th Cir. 2014) (cleaned up).  However, the complaint must still allege specific facts sufficient to support a claim.  *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

## III. DISCUSSION

### A. Claims Against the OJC

Plaintiff names the OJC as a Defendant in the Second Amended Complaint. As previously stated, the Court once before dismissed the OJC because the jail is a building, not a legal entity subject to suit under 42 U.S.C. § 1983. *See e.g.*, Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992)(" [s]heriff' s departments and police departments are not usually considered legal entities subject to suit" ); *Powell v. Cook County Jail,* 814 F. Supp. 757 (N.D. Ill. 1993)(jail not subject to suit); *Marsden v. Fed. Bureau of Prisons,* 856 F. Supp. 832, 836 (S.D.N.Y. 1994)(" jail is not an entity that is amenable to suit" ).

Accordingly, I recommend Ouachita County be substituted in place of the OJC as a Defendant in this lawsuit.

### B. Claims against Defendant Corporal McDonald and Jerry Juneau

Plaintiff names Corporal McDonald and Jerry Juneau, the CEO of City Tele Coin, as Defendants in his Second Amended Complaint. However, Plaintiff does not make any allegations against them. Accordingly, I recommend all claims be dismissed without prejudice against Defendants McDonald and Juneau.

### C. Claim One – Denial of Medical Care

In Claim One, Plaintiff alleges Defendant Nurse Jane Doe was deliberately indifferent to his serious medical needs when she refused to provide Plaintiff with a "therapy ball" which was prescribed by a physician for use in the rehabilitation of his hand. Accordingly, the Court recommends Claim One for denial of medical care against Defendant Nurse Jane Doe proceed in both individual and official capacities.

D.  **Claim Two – Excessive Force**

In Claim Two Plaintiff alleges Defendants Norwood, Owens and Erwing used excessive force against him on December 18, 2021.  Plaintiff does not allege any of these Defendants used any physical force on him.  Instead, he claims Defendants Owens and Erwing stared "angrily at him", Defendant Erwing used a loud voice and verbally threatened to use his taser, and Defendant Erwing's "hand appeared to go to his holster where his weapon is…"  (ECF No. 22, p. 8).  Plaintiff alleges he pleaded with Defendant Norwood to stop this abuse and nothing was done.

Plaintiff's allegations describe verbal threats made by Defendants Owens and Erwing - not physical force.  Under the 8th Amendment, prison officials are prohibited from using excessive physical force against prisoners.  *Farmer v. Brennan,* 511 U.S. 825 (1994); *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  The law is clear, "verbal threats do not constitute a constitutional violation."  *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985).  Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension.  *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (inmate' s claims of general harassment and of verbal harassment were not actionable under § 1983); *O' Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail official did not rise to the level of a constitutional violation).

Accordingly, I recommend Plaintiff's individual and official capacity claims of excessive force against Defendants Owens, Erwing, and Norwood in Claim Two be dismissed with prejudice for failure to state a claim.

E.  **Claim Three**

As previously stated, Plaintiff includes the following claims under Claim Three:  Claim 3(a) "1st Amendment/Denial of Freedom of Speech"; Claim 3(b) "Freedom of Speech –

(Publications)"; Claim 3(c) "Freedom of Speech – (1st & 5th Amendment) RFRA – RLUIPA (Religion)"; Claim 3(d) "Due Process – Equal Protection Law"; and Claim 3(e) "Federal Privacy Act (Fourth Amendment)". Within the nine pages of narrative which comprises Claim 3 (a)-(e), Plaintiff makes allegations in addition to those described by his various subtitles including what the Court construes to be potential claims based on: failure to protect/retaliation for filing grievances, interference with legal mail, due process violations relating to his placement in solitary confinement, conditions of confinement while in solitary (i.e. unsanitary conditions within the cell, no working call button, denial of phone, commissary, and tablet/kiosk access), denial of medical care while in solitary confinement, unlawful search of his cell, denial of access to the courts and his attorney.

First, Claims Three (a) – (e) are extremely difficult to decipher because Plaintiff attempts to assert unrelated claims over a period of nine (9) months against "All" Defendants. However, Plaintiff only mentions by name Defendants Owens, John Doe, Norwood, Ellis, and City Tele Coin in various portions of the claim(s) and makes many broad and conclusory statements unsupported by factual allegations.[4] Even so, after reviewing the nine (9) pages of narrative the Court finds Plaintiff has stated claims against certain Defendants which should proceed. Therefore, the Court will address each of what the Court construes as claims in the order they are presented in the Second Amended Complaint even though the claims are not specifically identified in each of the subtitles in Claim Three.

---

[4]Plaintiff was instructed by this Court twice to file a complaint writing short, plaint statements telling the Court: the constitutional right Plaintiff believes was violated; the name of the Defendant who violated the right; exactly what the Defendant did or failed to do; how the action or inaction of that Defendant is connected to the violation of the constitutional rights; and what specific injury Plaintiff suffered because of the misconduct of that Defendant. (ECF Nos. 6, 14). Moreover, the complaint form clearly states, "If you need more space for more claims, list the additional claims on another piece of paper, using the same outline". (ECF No. 22, p. 17). Here, Plaintiff has failed to comply with the instructions of the Court with respect to what he identifies as Claim Three. Nevertheless, the Court believes it would be futile to order Plaintiff to amend his complaint for a third time.

1.  **Claim 3(a) described as "1st Amendment/Denial of Freedom of Speech"**

(A)  **Failure to protect / Retaliation for filing grievances**

Plaintiff alleges Defendant Owens told other inmates he was a "trouble maker" before he arrived at the OCJ and shortly thereafter, Defendant John Doe turned off body cameras and told the inmates to accuse Plaintiff of planting contraband in their cells, and Defendant Norwood attempted to influence and delay the date for Plaintiff's federal sentencing hearing to keep him jail "…longer to possible 'plant' evidence against him or to get him hurt". In addition, Plaintiff claims Defendants Owens and Norwood told other inmates to make death threats against him while he was in solitary confinement and Defendant Ellis told the other inmates not to assist Plaintiff in obtaining affidavits or they would be placed in solitary confinement. Plaintiff alleges these actions were done in retaliation for all the grievances he filed. Plaintiff does not allege these actions were done pursuant to a policy of custom of Ouachita County.

The Court finds these allegations are sufficient to state claims for failure to protect and retaliation for filing grievances. Accordingly, I recommend these claims proceed against Defendants Owens, John Doe, Norwood, and Ellis in their individual capacity only.

(B)  **Interference with legal mail**

Plaintiff alleges on or about January 14, 2021, Defendant Owens delivered a small packet of legal mail "opened the package from the lawyer and went page by page- reading through his [Plaintiff's] legal work…" The Court finds Plaintiff has stated a claim against Defendant Owens based on interference with his legal mail. The Court recommends this claim proceed against Defendant Owens in his individual capacity only.

**(C)  Placement in solitary confinement without due process**

Plaintiff alleges On January 14, 2021, Defendants Norwood and Owens placed him in solitary confinement, without any explanation, process or notice of disciplinary infractions, for approximately eighty-six (86) days.   The Court finds Plaintiff has stated a claim against Defendants Norwood and Owens for placing him in solitary confinement without due process and recommends that claim proceed against them in both individual and official capacities.

**(D)  Conditions of confinement**

Plaintiff alleges Defendants Owens and Norwood subjected him to unlawful conditions of confinement while he was in solitary confinement including: an unsanitary cell (i.e. "smeared with feces and infested with insects, without light for 18 hours a day, and without all his property"); denial of commissary items he had paid for, and denial of access to the phone and kiosk/tablet.  He also claims the conditions were the result of a policy or custom of Ouachita County.  Plaintiff also alleges Defendant City Tele Coin was involved in denying him access to phone services.

The Court finds Plaintiff has stated claims based on alleged unlawful conditions of confinement against Defendants Norwood, Owens, and City Tele Coin.  Accordingly, the Court recommends these claims proceed against these Defendants in both individual and official capacities.

**(E)  Denial of medical care**

Plaintiff also alleges while he was "in the hole…he asked every day…for access to medical. He was having bad nerve pain, he needed help.  Each time he asked – the officers would laugh and say 'sure buddy'.  Although *pro se* complaints are to be construed liberally, "they must still allege facts sufficient to support the claims advanced." *Stone v. Harry,* 364 F.3d 912, 914 (8th Cir. 2004). To put an individual defendant on sufficient notice of the claims against him, a plaintiff must

explain each defendant's involvement by informing the defendant of the alleged acts of which he is accused that could result in that defendant's liability. *Frey v. City of Herculaneum,* 44 F.3d 667, 672 (8th Cir. 1995).

First, Plaintiff does not identify the "officers" he alleges denied him access to medical care. Moreover, he does not sufficiently describe what his medical need was. Therefore, the allegations do not give Defendants adequate notice of the claims against them and fail to state a claim for relief. Accordingly, I recommend Plaintiff's claim for denial of medical care set forth under Claim Three be dismissed without prejudice.

**(F)  Denial of access to the Courts**

Plaintiff claims Defendants Owens and Norwood did not release Plaintiff for transport to attend a court date in his state criminal case and caused him to appear at a Zoom hearing "at the end of court" without having an opportunity to shave. He also alleges while he was in solitary confinement, he did not have access to a law library and was denied access to his attorneys because he was not permitted to use the phone. Plaintiff does not claim the alleged violation of his rights was a result of any policy, custom or practice of Ouachita County.

The Supreme Court has held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977). Nevertheless, *Bounds* "did not create an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey,* 518 U.S. 343, 351 (1996). Instead, prison officials must provide inmates with "meaningful access to the courts," *Bounds,* 430 U.S. at 824, and providing a law library is merely one way to comply with this obligation. *See Bear v. Fayram,* 650 F.3d 1120, 1123 (8th Cir. 2011) (the constitutional

requirement of access to the courts may be satisfied in a number of ways including, prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other methods).

An inmate cannot prevail on an access-to-courts claim unless he can demonstrate he suffered prejudice or actual injury as a result of the prison officials' conduct. *See Lewis,* 518 U.S. at 351-2; *see also Farver v. Vilches,* 155 F.3d 978, 979-80 (8th Cir. 1998) (per curiam); *Klinger v. Dep't of Corr.,* 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic); *McMaster v. Pung,* 984 F.2d 948, 953 (8th Cir. 1993). "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.'" *Hartsfield v. Nichols,* 511 F.3d 826, 831 (8th Cir. 2008) (citations omitted).

Here, Plaintiff states he was represented by counsel in his state criminal cases. He also successfully filed his original complaint in the instant lawsuit. Therefore, the lack of access to a law library did not interfere with his meaningful access to the courts. However, the Court finds Plaintiff has stated a claim that Defendants Owens and Norwood interfered with his access to his attorneys and accordingly, I recommend Plaintiff's claim for denial of access to the courts proceed against them in their individual capacity only.

### 2. Claim 3(b) described as "Freedom of Speech – (Publications)

Plaintiff alleges an official capacity claim against the OJC.[5]  He states "(OCJ) has an absolute ban for all prisoners including Plaintiff [preventing him from receiving]…books, newspapers and magazines."  Plaintiff claims he was denied the Prison Legal News as well as books ordered from Amazon.  Accordingly, the Court recommends Plaintiff's claim regarding denial of newspapers and other reading material proceed against the Ouachita County.

### 3. Claim 3(c) described as "Freedom of Speech – (1st and 5th Amendment) RFRA – RLUIPA (Religion)

Plaintiff alleges while he was incarcerated at the OCJ, he was denied "religious material, such as the Jewish Bible and materials that was shipped to him from amazon…".  He claims this was done intentionally "to force him to forgo religious precepts and violates his rights and beliefs.  Plaintiff does not identify any individual Defendants as being involved in this claim.  Accordingly, the Court finds Plaintiff has stated only an official capacity claim against Ouachita County for interfering with his right to exercise his religion and recommends the claim proceed.[6]

### 4. Claim 3(d) described as "Due Process – Equal Protection Law"

In this portion of Claim 3 Plaintiff does not specifically identify any individual Defendant and simply repeats previous allegations relating to "Defendants…interfered with his legal papers and mail and denied him access to the phone and law library, grievance for filing stretches of time, writing materials…", and placed him in an unsanitary cell.  These allegations have already been addressed above and therefore the Court recommends Claim 3(d) "Due Process – Equal Protection Law" in both individual and official capacity be dismissed without prejudice.

---

[5] Plaintiff also repeats allegations against Defendants Owens, Norwood and City Tele Coin regarding their interference with his access to phone services.  This claim has been previously addressed.

[6] Plaintiff once again makes overlapping allegations concerning his denial of reading materials including the Prison Legal News.

### 5. Claim 3(e) "Federal Privacy Act (Fourth Amendment)"

Plaintiff alleges the "(OCJ) violated the Federal Privacy Act, when they posted a photo of the Plaintiff on their website which initially directly and indirectly lead to one of the many verbal assaults and threats on the plaintiff by other prisoners". This claim fails as a matter of law.

Plaintiff has no right to privacy in his arrest records – including an arrest or booking photograph. *See Paul v. Davis,* 424 U.S. 693, (1976) (there is no constitutional privacy protection against publicizing the fact of Respondent's arrest on a shoplifting charge); *Andaluz-Prado v. Helder,* 2016 WL 4432705 *2 (W. D. Ark. 2016) (arrest records, including any booking photographs, are public records and are not protected from disclosure). Accordingly, I recommend Claim 3(e) "Federal Privacy Act (Fourth Amendment)" be dismissed with prejudice.

## IV. CONCLUSION

For the reasons stated above, I recommend the following:

1) Ouachita County be substituted in place of the OCJ as a Defendant;

2) All claims against Defendants Corporal McDonald and Jerry Juneau be DISMISSED WITHOUT PREJUDICE;

3) Claim One for denial of medical care against Defendants Nurse Jane Doe in both individual and official capacities PROCEED;

4) Claim Two for excessive force against Defendants Owens, Erwing, and Norwood in both individual and official capacities be DISMISSED WITH PREJUDICE for failure to state a claim;

5) Claim Three (a)(i) for failure to protect and retaliation for filing grievances against Defendants Owens, John doe, Norwood and Ellis PROCEED in their individual capacity and the claims against them in their official capacity be DISMISSED WITHOUT PREJUDICE;

6) Claim Three (a)(ii) for interference with legal mail PROCEED against Defendant Owens in his individual capacity only and the official capacity claims against him be DISMISSED WITHOUT PREJUDUCE.

7) Claim Three (a)(iii) for violation of due process in placing Plaintiff in solitary confinement against Defendants Norwood and Owens in both individual and official capacity PROCEED;

8) Claim Three (a)(iv) for unlawful conditions of confinement against Defendants Norwood, Owens, and City Tele Coin in both individual and official capacities PROCEED;

9) Claim Three (a)(v) for denial of medical care in both individual and official capacities be DISMISSED WITHOUT PREJUDICE;

10) Claim Three (a)(vi) for denial of access to the courts against Defendants Owens and Norwood in their individual capacity PROCEED and the official capacity claims be DISMISSED WITHOUT PREJUDICE;

11) Claim Three (b) against Ouachita County for denial of newspapers and other reading material PROCEED;

12) Claim Three (c) against Ouachita County for interfering with Plaintiff right to exercise his religion PROCEED;

13) Claim Three (d) for "Due Process – Equal Protection Law" in both individual and official capacities be DISMISSED WITH PREJUDICE; and

14) Claim Three (e) for violation of the "Federal Privacy Act (Fourth Amendment)" against Ouachita County be DISMISSED WITH PREJUDICE.

The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.

21

**IT IS SO ORDERED** this 30th day of June 2021.

*/s/ Barry A. Bryant*

HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE