IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

MARCO GUIRLANDO                                                               PLAINTIFF

v.                                         Civil No. 1:21-cv-01015

OUACHITA COUNTY; CITY TELE COIN;
DAVID NORWOOD, Sheriff; CAMERON OWENS,
Captain; NURSE JANE DOE; GUARD ELLIS;
And C/O JOHN DOE                                                              DEFENDANTS

## REPORT AND RECOMMENDATION

This is a civil rights action filed by Plaintiff Marco Guirlando pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Plaintiff's claims arose while he was incarcerated in the Ouachita County Jail ("OCJ") between September of 2020, and May of 2021, awaiting trial on pending criminal charges and for a time after his conviction.[1]

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. The case is before the Court on a Motion to Dismiss (ECF No. 44) filed by City Tele-Coin Company, Inc. ("CTC")[2]. The Motion was filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. After Plaintiff pointed out that CTC filed its Answer (ECF No. 40) prior to filing the Rule 12(b) motion making it untimely, CTC conceded

---

[1] Plaintiff had two criminal cases filed against him in this district. The first, *United States v. Guirlando,* Case No. 1:19-cr-10001-001, charged Plaintiff with the sexual exploitation of a minor via the production of child pornography and the possession of child pornography. The indictment was filed on February 6, 2019. The case was dismissed by the Government when Plaintiff pled guilty in the second case, *United States v. Guirlando*, 1:20-CR-10005-001. The second case was filed on January 27, 2020. Plaintiff was charged with traveling with intent to engage in illicit sexual conduct and he pled guilty to that charge on the day the case was filed, January 27, 2020 (1:20-cr-10005-001;ECF Nos. 4-5). He was sentenced on May 3, 2021, to 60 months imprisonment in the Federal Bureau of Prisons. *Id*; (ECF Nos. 26-27).

[2] Defendant City Tele Coin identified itself as "City Tele-Coin, Inc." in its Answer. (ECF No. 40).

1

that Plaintiff is technically correct and asks (ECF No. 54) the Court to treat the Motion as one for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[3] The Motion will be so treated. Plaintiff has responded (ECF No. 51) to the Motion and CTC has filed a Reply. (ECF No. 54).

## I. PROCEDURAL HISTORY

Plaintiff filed a Second Amended Complaint on June 10, 2021. (ECF No. 22). Plaintiff specifically names the following Defendants in the Second Amended Complaint: the OCJ; David Norwood - the Sheriff of Ouachita County; Cameron Owens – a Captain at the OCJ; C/O McDonald – a guard at the OCJ; C/O Erwing – an officer at the OCJ; Jane Doe – a Nurse at the OCJ; C/O John Doe – an officer at the OCJ; City Tele Coin – the provider of phone services for the OCJ; and Jerry Juneau – identified as the "CEO" of City Tele Coin. (ECF No. 22). Although not specifically named as a Defendant, Plaintiff makes allegations against Guard Ellis in the Second Amended Complaint. *Id*. at p. 12.

A pre-service screening Report and Recommendation (ECF No. 28) which was adopted *in toto* on August 19, 2021 (ECF No. 32), dismissed various causes of action and a number of the Defendants.[4] As relevant to CTC, the following plausible claim was found to exist: "Claim Three (a)(iv) for unlawful conditions of confinement against Defendants Norwood, Owens, and City Tele Coin in both individual and official capacities…" *Id.* at p. 2.

---

[3] Rule 12(h)(2)(B) of the Federal Rules of Civil Procedure provides that a defense of failure to state a claim may be raised by motion under Rule 12(c).

[4] In his response to the Motion to Dismiss, Plaintiff indicates that because he was in-transit he did not receive notice of the entry of the screening report and recommendation. (ECF No. 51 at p. 3). He also maintains he should be given an opportunity to again amend his complaint to correct any deficiencies. *Id.* The proper manner to bring his lack of notice regarding the report and recommendation and its adoption to the attention of the Court, would be to file a motion asking Chief United States District Judge Hickey to reconsider her order (ECF No. 32) adopting the report and recommendation. Plaintiff may also file a Motion to Amend his Amended Complaint.

## II. APPLICABLE LAW

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings. The Court applies the same standard on a motion for judgment on the pleadings as it would on a Rule 12(b)(6) motion for failure to state a claim. *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir. 1990).

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (cleaned up) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

In evaluating the plausibility of a claim, "[t]he Court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Mills v. City of Grand Forks,* 614 F.3d 495, 498 (8th Cir. 2010). While the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support his claims. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

## III. DISCUSSION

CTC now moves for dismissal on the following grounds: (1) failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"); (2) failure to state a cause of action for which relief can be granted; and (3) qualified immunity. (ECF No. 44).

In the Second Amended Complaint (ECF No. 22), Plaintiff describes his claim against CTC as follows: "Defendant Owens, Sheriff Norwood and (CTC) coordinated together to interfere and deny him access to his phone system – owned – operated by (CTC) and is agents in an attempt to comply with their client, (OCJ), (CTC) did in fact take unlawful orders – without any due process, turned off his telephone access by turning his account off."[5]

### A. Failure to Exhaust Administrative Remedies

CTC first argues Plaintiff's claims fail because he did not fully exhaust his administrative remedies before filing the instant lawsuit. The PLRA in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id*. at 218 (internal quotation marks and citation omitted). The Court stated the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

The Eighth Circuit has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431

---

[5] Although Plaintiff uses the phrase "due process", the Court did not construe Plaintiff's Second Amended Complaint to assert a due process claim against CTC. (ECF No. 28). Instead, the Court interpreted Plaintiff's allegations to be a claim for unlawful conditions of confinement.

4

F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (explaining a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)).

Plaintiff argues CTC and other Defendants "turned off his access to the system" after he filed a grievance against them for denying him access to the phone [and kiosk] effectively making his administrative remedies unavailable. (ECF No. 51, p. 2). In addition, Plaintiff states "he has written and has copies of his attempts to exhaust the grievance step since his transfer [from OCJ] as well, and the Defendants (CTC) failed to respond to his attempts and neither did OCJ Defendants." *Id.*

At this early stage of the litigation, before any discovery has been conducted, the Court should not dismiss Plaintiff's claims against CTC based on an alleged failure to exhaust his administrative remedies especially where Plaintiff alleges CTC and others made those remedies unavailable to him.

**B. Failure to State a Cause of Action for which Relief Can Be Granted**

Next, CTC argues Plaintiff fails to state a cause of action upon which relief can be granted because "the unlawful conditions of confinement claim fails because restrictions on his telephone use do not pose a substantial risk of serious harm". (ECF No. 45, pp. 3-6). The Court concludes now, as it did at the screening stage, that Plaintiff has stated a plausible unlawful conditions of confinement claim.

CTC argues it was appropriate for it to take orders from prison officials to restrict an inmate's telephone access while the inmate is temporarily segregated for disciplinary reasons. (ECF No. 45, p. 4). It also argues "the impact of requiring CTC to screen the prison officials' decisions to restrict inmate access to the telephone system would greatly impact CTC and its

resources. It would be a substantial burden for CTC to review every incident and event that led up to a decision to restrict access…" *Id.* at pp. 4-5.

In the Second Amended Complaint Plaintiff alleges that CTC owns and operates the phone system used at the OCJ and works in conjunction with the OCJ officials in shutting off access to the same. Plaintiff also claims he was denied access to the phone system between "Sept. 24, 2020 to Current/Ongoing (May 2021)" which allegedly inhibited his ability "to communicate with his attorneys in civil and criminal matters… [to make a] sick call request, [and] and to be able to file grievances.". (ECF No. 22, p. 10). The Court believes Plaintiff has adequately alleged CTC is affirmatively involved in depriving him of access to the phone. The issue of whether CTC has any control over or discretion in terminating access to these items is presumably covered by the provisions of the contract between Ouachita County and CTC. Discovery is necessary on this issue. Accordingly, CTC's Motion for Judgment on the Pleadings for failure to state a cause of action should be denied.

### C. Qualified Immunity

Finally, CTC argues it is entitled to qualified immunity on Plaintiff's claims. CTC recognizes that as a private entity it must first be determined whether it is entitled to assert qualified immunity under § 1983. (ECF No. 45 at p. 6). CTC compares itself to a shopkeeper who at common law also engaged in public service when he stepped "behind a window in his shop to don his postman's hat." *Filarksy v. Delia,* 566 U.S. 377, 385 (2012)(cleaned up). Specifically, CTC argues it "doffs its private activities and steps behind the jailhouse bars to service inmates housed in the Union [Ouachita] County Jail with a modern telecommunications system." *Id.*

However, CTC fails to discuss the impact, if any, of *Davis v. Buchanan Cnty., Mo.,* 11 F.4th 604 (8th Cir. 2021), *petition for cert. docketed*, *Munger et al v. Davis, et al.,* ___ U.S. ____

(Nov. 24, 2021), in which the Eighth Circuit held that contract medical care providers at a detention facility were not entitled to qualified immunity. *Id.* at 622. The Eighth Circuit, discussing the Supreme Court opinions in *Richardson v. McKnight,* 521 U.S. 399 (1997) and *Filarsky*, noted the availability of qualified immunity to state actors depended on application of two-factors: (1) the historical availability of immunity; and (2) the weight of the policy reasons for affording protection from suit under § 1983 *Davis,* 11 F.4th at 617. The three policy considerations are "avoiding unwarranted timidity in performance of public duties, ensuring that talented candidates are not deterred from public service, and preventing harmful distractions from carrying out the work of government that can often accompany damages suits." *Id.* at 620 (cleaned up). The Eighth Circuit concluded that "[b]ecause this court has found no firmly rooted history of immunity, and the purposes of qualified immunity, on balance, do not favor extending immunity, these medical defendants, as employees of large firms systematically organized to perform a major administrative task for profit, are not entitled to assert the defense of qualified immunity." *Id.* at 622.

The question is not as easily resolved as suggested by CTC. To properly analyze whether CTC is entitled to qualified immunity the Court needs more information about the relationship between it and Ouachita County. The Court must consider such matters as whether there is any ongoing or direct supervision by the OCJ staff; whether CTC has any authority to terminate access other than by direct order of command staff; whether CTC is required to carry insurance, etc. This information is not available to the Court in conjunction with this Motion for Judgment on the Pleadings. The Court must leave the issue of whether CTC is entitled to qualified immunity to a later stage in this litigation. CTC's Motion for Judgment on the Pleadings should be denied.

### D. Nature of a Motion for Judgment on the Pleadings

As noted above, the Court applies the same standard on a motion for judgment on the pleadings as it would on a Rule 12(b)(6) motion for failure to state a claim. *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir. 1990). In considering such a motion the Court should view all facts pleaded by the nonmoving party as true and grant all reasonable inferences in favor of that party. *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008). Here CTC asks the Court to consider the truthfulness of or weigh the facts, either alleged in the Amended Complaint or as assumed by CTC in the instant Motion. At this stage of the proceeding, it is improper for the Court to do anything other than to take the facts alleged in the Amended Complaint as true and determine whether a viable claim has been made. To do otherwise would convert this Motion for Judgment on the Pleadings to a motion for summary judgment.

### E. First Amendment Claim

At its initial screening the Court did not read the Second Amended Complaint to assert a free speech claim against CTC. However, CTC has so read it and has moved for dismissal of the free speech claim. Upon additional review of the Second Amended Complaint, the Court again finds that no claim pursuant to the First Amendment has been raised by Plaintiff. Accordingly, the Court should not consider this issue.

### IV. CONCLUSION

For the reasons stated above, I recommend the Motion for Judgment on the Pleadings (ECF No. 44 - converted from a Motion to Dismiss) be **DENIED.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are**

**reminded that objections must be both timely and specific to trigger *de novo* review by the district court.**

      **IT IS SO ORDERED** this 15th day of February 2022.

                                                  /s/ Barry A. Bryant
                                                HON. BARRY A. BRYANT
                                                UNITED STATES MAGISTRATE JUDGE